Stephanie R. Tatar – State Bar No. 237792
**TATAR LAW FIRM, APC**
3500 West Olive Avenue, Suite 300
Burbank, California 91505
Telephone: (323) 744-1146
Facsimile: (888) 778-5695
Stephanie@thetatarlawfirm.com

*Attorney for Plaintiff*
**David Garza, Naser Alzer,**
**Margarita Hernandez, Kimberly Kennedy,**
**Amandeep Singh, Samah Haider**
and the class

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **David Garza, Naser Alzer, Margarita Hernandez, Kimberly Kennedy, Amandeep Singh, Samah Haider,** on behalf of themselves and of others similarly situated, | ) | Case No. 2:18-at-1198 |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **CLASS ACTION COMPLAINT** |
| | ) | **JURY TRIAL DEMANDED** |
| **Confi-Chek, Inc.**, a holding company for **Confi-Chek Investigations, Peoplefinders.com, Enformion, Inc., PublicRecordsNOW.com, PrivateEye.com, Veromi.net, and Advanced Background Checks**, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

1

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1    1.    Plaintiffs **David Garza, Naser Alzer, Margarita Hernandez, Kimberly**

2   **Kennedy, Amandeep Singh, and Samah Haider** (hereinafter "Plaintiffs"),

3

4   individually and on behalf of others similarly situated, brings this class action

5   lawsuit against **Confi-Chek, Inc.** and its subsidiaries **Confi-Chek Investigations,**

6   **Peoplefinders.com, Enformion, Inc., PublicRecordsNOW.com,**

7

8   **PrivateEye.com, Veromi.net, and Advanced Background Checks** (collectively,

9   all of these entities will be referred to as the "Defendants").

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

## I.    PRELIMINARY STATEMENT

2.    Plaintiffs David Garza, Naser Alzer, Margarita Hernandez, Kimberly Kennedy, Amandeep Singh, and Samah Haider, on behalf of themselves and all others similarly situated, complain of Defendants Confi-Chek, Inc., the parent or holding company, and its following subsidiaries: Peoplefinders.com, Enformium, Inc., PublicRecordsNOW.com, PrivateEye.com, and Advanced Background Checks, Inc.

3.    This class action arises from the Defendants' willful publication and/or sale of consumers' expunged, expuncted and/or sealed criminal records in violation of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. (the "FCRA") and Texas Business and Commerce Code §§ 109.001–.007. Plaintiffs bring this action on behalf of consumers throughout the country who have been the subject of prejudicial, misleading and inaccurate background reports published and/or sold by the Defendants and anticipate adding other relevant state-law causes of action, similar to the Texas statute cited, as appropriate. The Defendants adopted and maintained a policy and practice of failing or refusing to timely update such consumers' criminal record histories to eliminate expunged, expuncted, or sealed cases, thus not accurately reflecting the final disposition.

## II.    JURISDICTION AND VENUE

4.    This Court has subject-matter jurisdiction under 15 U.S.C. § 1681p, which allows any FCRA claim to "be brought in any appropriate United States

3

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

district court, without regard to the amount in controversy ….." Plaintiffs are bringing claims under the FCRA in this case.

5.     This Court also has subject-matter jurisdiction under 28 U.S.C. § 1331, which gives federal district courts original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. Plaintiffs are bringing claims under the FCRA in this case.

6.     This Court also has subject-matter jurisdiction under 28 U.S.C. § 1367 for supplemental state-law claims.  Plaintiffs also are bringing supplemental Texas statutory claims under TEX. BUS. & COM. CODE ANN. §§ 109.001–.007.

7.     This Court also has subject-matter jurisdiction under 28 U.S.C. § 1332(a) as there is complete diversity between the parties and the matter in controversy is more than $75,000.

8.     This Court also has subject-matter jurisdiction under 28 U.S.C. § 1332(d)(2) because this is a class action case where the matter in controversy, exclusive of interest and costs, exceeds $5 million and a member of a class of plaintiffs is a citizen of a state different from any defendant.

9.     This Court has general-and specific-personal jurisdiction over the Defendants under California Code of Civil Procedure § 410.10 because they are residents of California,

10.     Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b) as the Defendants all are from Sacramento, California.

4

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

### III.    PARTIES

11.    Plaintiff David Garza is an adult individual and citizen of the State of Texas who resides in Houston, Texas.

12.    Plaintiff Naser Alzer is an adult individual and citizen of the State of Texas who lives in Cedar Park, Texas.

13.    Plaintiff Margarita Hernandez is an adult individual and citizen of the State of Texas who lives in Waxahachie, Texas.

14.    Plaintiff Kimberly Kennedy is an adult individual and citizen of the State of Texas who lives in Houston, Texas.

15.    Plaintiff Amandeep Singh is an adult individual and citizen of the State of Texas who lives in San Antonio, Texas.

16.    Plaintiff Samah Haider is an adult individual and citizen of the State of Texas who lives in Houston, Texas.

17.    Defendant Confi-Chek, Inc. is a California corporation with its principal place of business in Sacramento, California. Defendant Confi-Chek, Inc. is the parent or holding company for the other named Defendants, and shares office space, customer service, personnel, data acquisition and management both with and across its named subsidiaries. As such, it provides or controls background screening services, decision-making intelligence, public record reports and operates as a consumer reporting agency. Defendant and its subsidiaries regularly conduct business in the State of Texas, and it operates a principal place of business

5

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

at 1821 Q St. Sacramento, CA 95811-6718, an address shared by all the subsidiary Defendants as well. Defendant and its subsidiaries are a "consumer credit reporting agency," as defined by 15 U.S.C. § 1681a(f), regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Defendant Confi-Chek, Inc. can be served with process by serving its agent for the service of process Robert S. Miller at 1821 Q St. Sacramento, CA 95811-6718, or wherever he may be found.

18. Defendant Enformion, Inc. is a California corporation with its principal place of business in Sacramento, California. Defendant provides or controls background screening services, decision-making intelligence, public record reports and operates as a consumer reporting agency. Defendant regularly conduct business in the State of Texas, and it operates a principal place of business at 1821 Q St. Sacramento, CA 95811-6718. Defendant is a "consumer credit reporting agency," as defined by 15 U.S.C. § 1681a(f), and regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Defendant Enformion, Inc. can be served with process by serving its agent for the service of process Robert S. Miller at 1821 Q St. Sacramento, CA 95811-6718, or wherever he may be found.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

19.     Defendants    Confi-Chek    Investigations,    Peoplefinders.com, Enformion, Inc., PublicRecordsNOW.com, PrivateEye.com, Veromi.net, and Advanced Background Checks are subsidiary business entities that act as alter egos for Confi-Chek, Inc., and each other, as described above, and they provide background screening services, decision-making intelligence, public record reports and operate as consumer reporting agencies. These subsidiary Defendants all operate a principal place of business at 1821 Q Street Sacramento, CA 95811-6718. The Defendants are "consumer credit reporting agency," as defined by 15 U.S.C. § 1681a(f) of the Act, regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing "consumer reports," as defined in § 1681a(d) of the Act, to third parties. Defendants     Confi-Chek     Investigations,     Peoplefinders.com, PublicRecordsNOW.com,    PrivateEye.com,    Veromi.net,    and    Advanced Background Checks, can be served with process by serving Confi-Chek, Inc.'s agent for the service of process Robert S. Miller at 1821 Q St. Sacramento, CA 95811-6718, or wherever he may be found.

20.     Subject to permission by the Court, Plaintiffs reserve the right to amend this Complaint to include any additional subsidiaries or affiliates uncovered during discovery in this case, which appears likely, given the Plaintiffs' pre-filing difficulty in mapping out the Defendants ownership structure, much less

7

ascertaining whomever else may have purchased, subscribed to, or been given the Confi-Chek, Inc., inaccurate database as their source of background information.

## IV.    FACTUAL ALLEGATIONS

21.      About one in three Americans has a criminal record of some kind. Eighty-seven percent of employers, 80 percent of landlords, and 66 percent of colleges screen for criminal records. Background checking has become an intractable barrier to the fundamental needs of life for huge numbers of people with criminal records and has become a significant cause of poverty in this country, a phenomenon known as collateral consequences.

22.      To alleviate this burden, most states expanded their expungement or sealing laws between 2009 and the present. For instance, Texas passed its own such protective provisions in 2013, which is today codified in Texas Business and Commerce Code §§ 109.001–.007. These state laws, of course, provide additional remedies and protections to those found in the federal Fair Credit Reporting Act (15 U.S.C. § 1681 et seq), which has long forbidden the publication and reporting of expunged or sealed records.  Despite the efforts of Congress and various state legislatures, however, the commercial screening industry's continued publication and reporting of expunged cases threatens to undermine the whole strategy of broadening expungement as a remedy for the harm of collateral consequences.

23.      Moreover, the proliferation of background check companies, numbering in the hundreds and all charging subscription or access fees, creates

8

insurmountable logistical and financial obstacles to anyone wanting to insure his or her expunged criminal record was, in fact, removed from publication by the universe of online businesses operating in this field. First, someone would need to locate every reporting site, which is practically impossible and, second, pay to join every site and then negotiate the removal of any wrongful publication of expunged or sealed records found, on a site-by-site basis. More difficult still, a number of background reporting companies, such as the Defendants in this case, employ multiple online "storefronts," each branded with a different name but all using the same employees and database. By this method, they attempt to confuse clients and avoid any and all regulation by disclaiming that they are governed by the FCRA at all. Needless to say, but the only reason not to operate openly as a legitimate, regulated background reporting company is to save the expense and effort required to provide accurate and legally permissible background information. As a result of this "Wild West" situation in the background screening industry, expunged records can be, and are, available for anyone to view for months or even years while, simulatneously, remaining unknown and undiscoverable to the individuals reported upon.

**A.  *The Defendants Practice as a Consumer Reporting Agency and Furnisher of Consumer Reports for Employment Purposes.***

24.      The Defendants operate background investigation websites that allow users to search for consumers based on several categories, including name, date of

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

birth, and state of residence. Such reports may contain numerous items of information, including but not limited to age, employer, current and previous addresses, phone numbers, email addresses, arrest and conviction records, the identity of relatives, property records, marriage and divorce records, social media accounts, and lawsuit records.

25.     The Defendants allow consumers nationwide to request, for a fee, a background report on virtually any person in the United States. In response to a request, the Defendants obtain information from various sources and assemble it into detailed reports they provide to users.  These reports contain private, sensitive and often erroneous data, including but not limited to residential history, birth dates, criminal records, tax records, DMV records, professional license records, civil suits, and social media information.

26.     The Defendants maintain inadequate policy or procedures to insure they accurately assemble and provide consumer reports in compliance with the FCRA, especially in the matter of eliminating expunged, expuncted, or sealed criminal records from their websites and reports. All of the Defendants' terms of service pages expressly disclaim any and all responsibility for inaccuracies in their respective data bases and reports, including criminal records, by purporting to foist this duty on the government agencies and third party data providers who create or provide this information to the Defendants.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

27.    Instead, the Defendants seek to shield their non-compliant reporting behind a self-serving claim that none of them are consumer reporting agencies, that they do not sell consumer reports, and that they are not subject to the FCRA.

28.    But what the Defendants really provide is highly sensitive personal, legal and financial information regarding individuals. The information is the same information that is provided in consumer reports by recognized consumer reporting agencies and the information in the Defendants' reports are compiled using the same data sources as the major consumer reporting agencies reports.

29.    Moreover, the Defendants' customers are in no way prevented from using these reports for the same purposes as users of other consumer reports — to make decisions regarding employment, housing, and credit worthiness, among other things.

30.    For the reasons above, and at all times pertinent hereto, the Defendants were consumer reporting agencies ("CRA"), defined by section 1681a(f) of the FCRA as follows:  "The term "consumer reporting agency" means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer."

31.      The Defendants obtain distilled and incomplete public record information, including criminal record history, from third party databases and courthouses and maintain such data in consumer files that they create and assemble. As a CRA, the Defendants are also required to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates, per 15 U.S.C. § 1681e(b).

32.      The Defendants do not, however, maintain strict procedures designed to ensure that such information is complete and up to date, nor do they utilize reasonable procedures designed to assure maximum possible accuracy. Based upon a common policy and practice, the Defendants regularly and illegally publish and report criminal records that have been expunged, expuncted or sealed by court order.

33.      The Defendants' practices not only violate the FCRA as a matter of law, the practices exact serious consequences on consumer job applicants and interstate commerce. Consumers who have attempted to obtain the deletion of negative background history are prejudiced in their ability to adequately determine whether the information is being accurately published or reported.

34.      Despite their duties to maintain strict procedures to assure that criminal record information is complete and up to date, and to utilize procedures designed to assure maximum possible accuracy of the criminal record information that they publish and/or sell to the public, the Defendants have nonetheless

12

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

deliberately, willfully, intentionally, recklessly and negligently adopted a policy and practice that disregards these duties, in violation of the FCRA.

**B.      *The Defendants Published Criminal Records Under Texas Law***

35.      Based on the same facts that triggered the FCRA compliance requirements above, the Defendants also fall squarely within the ambit of Chapter 109 of the Texas Business and Commerce Code.

36.      In Texas, when an order of expunction is final, "the release, maintenance, dissemination, or use of the expunged records for any purpose is prohibited," and "the person arrested may deny the occurrence of the arrest and the existence of the expunction order."  TEX. CODE CRIM. PROC. art. 55.03.

37.      Chapter 109 of the Texas Business and Commerce Code governs business entities that are engaged in publication of certain criminal record information.  Tex. Bus. & Comm. Code §§ 109.001–.007. Chapter 109 applies to a business entity that "publishes" criminal record information and that charges "a fee or other consideration to correct or modify criminal record information." TEX. BUS. & COMM. CODE § 109.002(a)(1).

38.      By posting the information on their websites, the Defendants made Plaintiffs' criminal record information available for inspection by anyone with access to the website; thus, "publishing" such records under Texas law, which defines "publishing" very broadly, requiring only that a background investigation website or company "communicate or make information available to another

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

person in writing or by means of telecommunications and includes communicating information on a computer bulletin board or similar system." TEX. BUS. & COMM. CODE § 109.001(4).

39.    By charging, for example, $29.95 for a single report or $19.95 per month for a subscription (and these prices vary between the Defendants depending on special offers, etc.) — and by making these fees or consideration mandatory for anyone wanting to access their own personal criminal records as part of the correction or modification process — the Defendants charge "a fee or other consideration to correct or modify criminal record information" under Texas law.

40.    Moreover, the Defendants' websites all contain a trap that ironically also constitutes "other consideration" under the law. Before anyone may pay for and create an account with the Defendants to ascertain whether or not their expunged or sealed records are being unlawfully published, they must agree to waive any right to pursue a trial by jury or class action. Foregoing these valuable rights also constitutes a form of consideration in this case.

41.    Next, a business entity may not publish criminal records if it has knowledge or has received notice that an order of expunction has been issued under article 55.03 Texas Code of Criminal Procedure. The Defendants received notice of expunction for each Plaintiff from both the Texas Department of Public Safety and from Plaintiffs themselves.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

42.     A business entity that publishes information in violation of section 109.005 is liable to the individual who is the subject of the information in an amount not to exceed $500 for each separate violation, and in the case of a continuing violation, an amount not to exceed $500 for each subsequent day on which the violation occurs. An individual who prevails in an action under section 109.005 is also entitled to recover court costs and reasonable attorney's fees.  TEX. BUS. & COMM. CODE § 109.005(d).

C.     *The Experience Of Representative Plaintiffs*

43.     The Representative Plaintiffs share nearly identical underlying damages in this case. Much like the vast majority of Americans employ a criminal defense attorney to handle an expungement, for approximately $500 each, Plaintiffs all hired the same online legal assistance service to expunge certain criminal records related to past offenses qualifying for expungement or sealing under Texas law. In each case, Plaintiffs — much like anyone nationwide seeking to expunge, expunct, or seal criminal records in an American court or tribunal — also paid several hundred dollars in court costs, fees, and related expenses to successfully expunge or seal their records and received an Expungement Order from state court.

44.     Similarly, Plaintiffs all paid an additional $100 to personally notify the universe of background check companies, including Defendants, that they must remove the expunged, expunctes or sealed records from their database.  In other words, all Plaintiffs suffered similar, if not identical, economic damages when the

Defendants both deprived them of the benefit of what they paid to obtain and what they paid to make sure the Defendants were aware of their duty under law.

45.    Next, copies of the Plaintiffs' Expungement Orders were served on appropriate state agencies and law enforcement offices who promptly removed and expunged all records and related files from state-run databases. These expunged Texas criminal charges were eliminated from the Texas Department of Public Safety database that was provided to bulk purchasers, including the Defendants.

46.    According to the Texas DPS website, the Defendants have not purchased a new criminal history database since September 6, 2010, although they continue to pay to receive the monthly files containing all of the expunction and nondisclosures granted each month in Texas. By regularly purchasing this database a company can ensure they stay in compliance because the Texas DPS removes all criminal records that have been sealed or expunged when providing the criminal records database. Almost all other background reporting company on the Texas DPS purchaser list bought updated data sets in 2018 and none are anywhere near eight years out-of-date, like the Defendants.

47.    Moreover, Texas DPS records show that the Defendants did receive proper notice from Texas DPS that Plaintiffs' relevant criminal records had been expunged and requiring the Defendants to cease any and all publication of those records.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

48.    Likewise, Plaintiffs, through their legal assistance service, provided proper notice to over a hundred commercial background reporting services, including the Defendants (*See* sample notice, attached as Exhibit A to this Complaint). The online mailing service used on behalf of Plaintiffs shows significant receipt of this notice by the Defendants.

49.    Despite the repeated efforts of both the Plaintiffs and the State of Texas, however, the expunged criminal records for each and every Plaintiff continue to be published and available to the public on the Defendants' websites, at least as of the filing date for this Original Complaint.

50.    As for the removal from public view of the expunged charges from state-run databases, any preparer of a background check that maintained strict procedures designed to insure complete and up to date information would have been aware that it was no longer appropriate to report the expunged charges. Frankly, even a preparer using less than strict procedures would have caught these publication and reporting problems, but the Defendants clearly were not and are not even doing minimal verification or record cleanup.

51.    Thus, the Defendants published and possibly reported Plaintiffs' expunged criminal records long after they had been hidden from public view and then eliminated from relevant state-run databases. Clearly, the Defendants failed or refused to search for updated public record information on Plaintiffs' expunged

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

criminal charges or employ other best practices to avoid publication of erroneous consumer data.

52.    At all times pertinent hereto, the Defendants were acting by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

53.    At all times pertinent hereto, the conduct of the Defendants, as well as that of their agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal and state laws and the rights of the Plaintiffs herein. The Defendants knowingly carry out a business practice of publishing and reporting criminal record information that is not current or up to date, and without assuring that such information has not been expunged or had its status changed. There is no reading or interpretation of section 1681e(b) of the FCRA, Chapter 109 of the Texas Business and Commerce Code, or any provision for that matter, which would justify, sanction, excuse or condone such a practice.

## V.    CLASS ACTION ALLEGATIONS

54.    Plaintiffs bring this action individually and as a class action for the Defendants' violations of sections 1681(e)(b) of the FCRA and of Chapter 109 of the Texas Business and Commerce Code, pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure, on behalf of the following Classes:

i) **FCRA CLASS:** *All natural persons residing in the United States whose expunged, expuncted, or sealed criminal records were published after the Defendants received notice that they were so expunged, expuncted or sealed within 2 years of the filing of this complaint; and,*

ii) **TEXAS BUSINESS and COMMERCE CODE CLASS:** *All natural persons who received an expunction from a Texas court or whose criminal records were sealed by a Texas court and whose expunged, expuncted, or sealed criminal records were published after the Defendants received notice that they were so expunged, expuncted, or sealed within 4 years of the filing of this complaint.*

55.    Each Class is so numerous that joinder of all members is impracticable. Although the precise number of Class members is known only to the Defendants, Plaintiffs aver upon information and belief that each Class numbers in the thousands.   The Defendants publish and sell standardized criminal history record information to thousands of individuals and businesses throughout the country.

56.    There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members. The principal questions include (a) whether the Defendants, by employing a policy and practice of publishing and disclosing expunged criminal record histories, willfully

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

and negligently violated FCRA section 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates; and (b) whether the Defendants violated Chapter 109 of the Texas Business and Commerce Code for the same reasons.

57.    Plaintiffs' claims are typical of the claims of each Class, which all arise from the same operative facts and are based on the same legal theories.

58.    Plaintiffs will fairly and adequately protect the interests of each Class. Plaintiffs are committed to vigorously litigating this matter. Plaintiffs have secured counsel experienced in handling consumer class actions. Neither Plaintiffs nor their counsel have any interests which might cause them not to vigorously pursue this claim.

59.    This action should be maintained as a class action because the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Classes, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

60.    A class action is a superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

controlling the prosecution of separate claims against Defendant is small as each cause of action is subject to a statutory damages cap and there is no reason to award different amounts per day among the Plaintiffs of those statutory damages that accrue daily. Management of the Class claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the Class members may be obtained from the Defendants' records.

## VI. CAUSES OF ACTION

### COUNT ONE – FCRA § 1681e(b)

61.    Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

62.    Pursuant to sections 1681n and 1681o, each of the Defendants is liable for negligently and/or willfully violating the FCRA by failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom a consumer report relates, in violation of section 1681e(b).

63.    As a result of Defendants' conduct Plaintiffs suffered actual damages in the form of out of pocket loss in the funds paid to complete the expungement, expunction, or sealing of criminal records process only to have Defendants continue to report obsolete and impermissible criminal information about them.

64.    Plaintiffs seek actual, statutory and punitive damages in addition to their costs and attorney fees pursuant to 15 U.S.C. §1681n.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

## COUNT TWO – TEX. BUS. & COM. CODE ANN. §§ 109.001–.007

65.    Plaintiffs incorporate the foregoing paragraphs as though the same were set forth at length herein.

66.    Pursuant to sections 109.001—.007, each of the Defendants are liable for failing to remove Plaintiffs' expunged criminal records from their websites and reports after being provided notice.

67.    The Plaintiffs are entitled to a penalty of up to $500 for each separate violation.  Each of the Defendants has engaged, and is engaging, in a continuing violation, so a separate penalty of up to $500 per violation is owed for each day on which the violation occurred TEX. BUS. & COMM. CODE § 109.005(b).

68.    The Plaintiffs are entitled to their attorneys' fees and costs related to their claim for penalties under Texas Business and Commerce Code Chapter 109. TEX. BUS. & COMM. CODE § 109.005(d).

## COUNT THREE - INJUNCTIVE RELIEF UNDER TEXAS LAW

69.    The Plaintiffs request that the Court enter a temporary and permanent injunction ordering the Defendants to comply with Texas Business and Commerce Code Chapter 109 by (1) immediately removing all information regarding any criminal record information related to the Plaintiffs or any class members that has been expunged by a Texas court from their databases, and (2) not publishing any criminal record information that has been expunged by a Texas court.  TEX. BUS.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

& COMM. CODE § 109.005(c) ("In an action brought under this section, the court may grant injunctive relief to prevent or restrain a violation of this section.").

70.    The Plaintiffs are entitled to their attorneys' fees and costs related to seeking and obtaining injunctive relief.  TEX. BUS. & COMM. CODE § 109.005(d).

## VII. JURY TRIAL DEMAND

71.    Plaintiffs demand trial by jury on all issues so triable.

## VIII. PRAYER FOR RELIEF

72.    WHEREFORE, Plaintiffs seek relief against the Defendants as follows:

(a) That an order be entered certifying the proposed Classes under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiffs and their counsel to represent the Classes;

(b) That judgment be entered against the Defendants for statutory damages in the amount of not less than $100 and not more than $1,000 per violation per Class member, pursuant to 15 U.S.C. § 1681n(a);

(c) That judgment be entered against the Defendants for punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

(d) That judgement be entered against the Defendants for statutory damages in the amount of not more than $500 per violation per Class member and, in the case of a continuing violation, an amount not to exceed $500 for each subsequent day on which such violation(s) occurred, pursuant to Chapter 109 of the Texas Business and Commerce Code;

(e) That the Court enter a temporary injunction, and on final judgment a permanent injunction, prohibiting the Defendants from publishing criminal record information that has been expunged by a Texas court.

(f) That judgment be entered in favor of Plaintiffs for actual damages related to obtaining the expungement, expunction or sealing of criminal records;

(g) That the Court award costs and reasonable attorney's fees pursuant to 15 U.S.C. §1681n and §1681o; and

(h) That the Court grant such other and further relief as may be just and proper.

Dated this 16th day of July, 2018.

Respectfully Submitted,

By:    /s/Stephanie Tatar
Stephanie R. Tatar – State Bar No. 237792
TATAR LAW FIRM, APC
3500 West Olive Avenue, Suite 300
Burbank, California 91505
Telephone: (323) 744-1146
Facsimile: (888) 778-5695
Stephanie@thetatarlawfirm.com

David George, Esq. (*Pro Hac Vice Application Forthcoming*)
BAKER WOTRING LLP
700 JP Morgan Chase Tower
600 Travis Street
Houston,TX  77002
Telephone: 713-980-1700
Facsimile: 713-980-1701
Email: dgeorge@bakerwotring.com

Kevin D. Green, Esq. (*Pro Hac Vice Application Forthcoming*)
CONSUMER ADVOCATE OFFICE OF KEVIN GREEN
800 Brazos St. Suite 1309
Austin, TX 78701
Telephone: (512) 695-3613
Email: kevingreen68@gmail.com

24

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Thomas J. Lyons Jr., Esq.
(*Pro Hac Vice Application Forthcoming*)
CONSUMER JUSTICE CENTER P.A.
367 Commerce Court
Vadnais Heights, MN 55127
Telephone: (651) 770-9707
Facsimile: (651)704-0907
Email: tommy@consumerjusticecenter.com

*ATTORNEYS FOR PLAINTIFFS*

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL